16 F.3d 411
 30 Collier Bankr.Cas.2d 921
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
PROFESSIONALS, INC.; Professionals I, Inc., Plaintiffs-Appellants,
v.
Jagdish P. BERRY, Shoba Berry; Richard G. Hall, Trustee in
Bankruptcy, Defendants-Appellees.
 No. 93-1228.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 27, 1993
Decided Feb. 1, 1994.
 
 1
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, District Judge. (CA-92-1647-A)
 
 
 2
 William Parry Dale, McChesney, Duncan & Dale, P.C., Washington, DC for Appellants.
 
 
 3
 Roy Baxter Zimmerman, Alexandria, VA, for Appellee.
 
 
 4
 Charles F. Fuller, Hanno I. Rittner, McChesney, Duncan & Dale, P.C., Washington, DC for Appellants.
 
 
 5
 E.D.Va.
 
 
 6
 AFFIRMED.
 
 
 7
 Before MURNAGHAN, Circuit Judge, and CHAPMAN, Senior Circuit Judge, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.
 
 OPINION
 PER CURIAM
 
 8
 Appellants, Professionals, Inc., and Professionals I, Inc., are judgment creditors of Jagdish Berry. Berry filed a voluntary petition under Chapter 11 of the Bankruptcy Code on January 23, 1990, thereby becoming the Debtor. He claimed certain parcels of property as exempt property under Virginia law, asserting that they were owned by himself and his wife as tenants by the entireties. Pursuant to 11 U.S.C. Sec. 522(l) and Bankruptcy Rule 4003, the appellants timely filed objections to the claim of exempt property.
 
 
 9
 Also in November of 1990, the Trustee of the Bankruptcy Estate filed an adversary action pursuant to 11 U.S.C.Secs. 547 and 548. The Trustee thereby sought to void the conveyances creating the tenancy by the entireties interests on the basis that they were preferential transfers and fraudulent conveyances. Following discovery, the Trustee and counsel for the Debtor reached a settlement whereby eight of the eleven properties would be non-exempt property of the Bankruptcy Estate and three of the properties would be exempt, to be conveyed to the Debtor and his wife, as tenants by the entireties. The appellants did not participate in the settlement and filed an objection thereto.
 
 
 10
 The bankruptcy court consolidated for hearing the appellants' Objection to Claim of Exempt Property and the Trustee's Request for Approval of Compromise Settlement. None of the parties objected to the consolidated hearing before the court. Following the hearing, the bankruptcy court ratified the proposed compromise settlement, but took no explicit action on the merits of the Objection to Claim of Exempt Property, deeming it mooted by the ratification of the Compromise Settlement. The District Court affirmed.
 
 DISCUSSION
 
 11
 The appellants, prior to the filing for bankruptcy, had prosecuted a successful Civil-RICO action against Jagdish Berry. In late 1989, judgment was awarded in favor of the appellants in the approximate amount of $1,700,000, which judgment was upheld by us in an unpublished opinion on April 2, 1992. At the time judgment was entered in the RICO action, Berry apparently had sufficient assets to satisfy the judgment.
 
 
 12
 On January 23, 1990, the voluntary petition for bankruptcy under Chapter 11 of the United States Bankruptcy Code was filed. In Berry's bankruptcy petition, he claimed eleven parcels of property to be exempt property pursuant to Sec. 55-20 of the Code of Virginia, asserting that they were owned by himself and his wife as tenants by the entireties. The first meeting of creditors in the Bankruptcy Estate was held on March 5, 1990.
 
 
 13
 Appellants filed objections to the claimed exemptions within the thirty days required by Bankruptcy Rule 4003. The basis of these objections was that the Debtor, in an effort to shield his assets from his creditors had made a fraudulent transfer of property, cloaking it in a tenancy by the entirety form which would lead it to be regarded as owned jointly by himself and his wife. Various estimates of the value of the properties so conveyed ranged from the hundreds of thousands of dollars to $1.5 million. Apparently, the passage of time has diminished the value of the eleven plots.
 
 
 14
 Although the appellants had filed their objections under 11 U.S.C. Sec. 522(l) and Bankruptcy Rule 4003 in April 1990, the Trustee filed a separate adversary action pursuant to his powers under 11 U.S.C. Secs. 547 and 548. The gravamen of his adversary action was that the eleven properties had been fraudulently transferred--the same charge asserted by the appellants. Following discovery, the Trustee and counsel for the Debtor entered into a settlement whereby eight of the eleven properties would be recognized to be non-exempt property of the Bankruptcy Estate and three of the properties would be treated as exempt property conveyed to Berry and his wife, as tenants by the entireties. The appellants objected to the settlement, fearing that although their judgment claims against Berry would survive bankruptcy, they would not be able to attach the three properties designated as belonging to him and his wife in tenancy by the entirety. The appellants, however, have not appealed the approval of the settlement.
 
 
 15
 The bankruptcy court consolidated for hearing appellants' Objection to Claim of Exempt Property and the Request for Approval of Compromise Settlement. Following the hearing, the bankruptcy court ratified the proposed Compromise Settlement but declined to rule on the merits of the Objection to Claim of Exempt Property.
 
 
 16
 The appellants appealed claiming that it was error for the bankruptcy court to fail to reach the merits of their objections, and that the court should have found that the eleven plots had been transferred fraudulently.
 
 
 17
 The instant case is of that rare variety that become less complex with study. It is important to underscore what is not before us. The appellants have not appealed the bankruptcy court's ratification of the settlement agreement.
 
 
 18
 Rather, the appellants or their counsel, are seeking a second bite at an apple that has already been eaten. However, suspicious the contested tenancy by the entireties transfers may have seemed, in an effort to avoid litigation, with the chance of an unfavorable result and depletion of the Bankruptcy Estate, the Trustee, having filed an adversary action under 11 U.S.C. Secs. 547 and 548, undertook to settle the case. Under the settlement, the estate was to acquire eight of the eleven properties and Berry (the Debtor) and his wife were to acquire the other three. In its Order Approving Compromise Settlement and Overruling Objections to Exemptions, the bankruptcy court observed "that the Trustee's determination and decision reflects a business judgment made in good faith upon a reasonable basis within the scope of their (sic) authority under the Code and should, therefore, be approved." In the end, the bankruptcy court ordered that "the objection filed by Professionals, Inc. and Professionals I, Inc. to certain exemptions ... is overruled. The exemptions are allowed." The bankruptcy court based its ruling on its following analysis:
 
 
 19
 Without regard to the prior conduct of the Debtors involved ... the practical fact of the matter is, if the Trustee, out of property which for all intents and purposes today would have a value in the area of $1.5 million, $1.6 million, has reached a settlement where it appears at least two-thirds of the property will come into the estate--Maybe it is worth 75% to the Trustees (sic). I don't think you can pin down exactly these type of valuations of cases.
 
 
 20
 The other practical effect is that, if the Court refuses to approve the compromise, then the Trustee starts over from ground zero and he has to either himself represent himself (sic) in pursuing this case, without assurance of having any funds to cover it--and that is probably what would happen, because it would probably be difficult for him to get an attorney who would be willing to undertake such extensive litigation based on what would amount to a ... recovery out of the case if and when won. I put a lot of weight on the recommendations of the Trustee if the Trustee has demonstrated himself to be capable and have proper judgment to make such decisions. And I find that to be the case here.... I think [the settlement] is a reasonable approach to resolving these difficult questions that are raised by the fact scenario.
 
 
 21
 Throughout the various stages of the litigation, the appellants have argued that in approving the settlement agreement (a decision not appealed),[1] the courts have threatened their recovery of their judgment lien against Berry. But that is no more than an attempt to relitigate what has already been decided and not appealed. The appellants have attempted to secure reversal of the allowance of tenancy by the entireties status to the three properties, citing Bankruptcy Rule 4003 which provides in pertinent part, "The Trustee or creditor may file objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting of creditors." Bankruptcy Rule 4003(c), goes on to state: "In any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed. After hearing on notice, the court shall determine the issues presented by the objections." The appellants assert that, in the shadow of the bankruptcy court's approval of the settlement agreement, they deserved a hearing on their particular claim of fraudulent transfer--a claim the Trustee made and settled on behalf of all of the creditors.
 
 
 22
 For us to ignore the approval of the Compromise Settlement would wipe out application of the well respected doctrine of the law of the case.[2] That would suggest that a bankruptcy court could never for its purposes approve a settlement, no matter how reasonable, that concerned the same issues. Furthermore, a ruling favorable to the creditors would not bring the property back into the estate automatically. Having had the conveyance determined fraudulent, the Trustee, not the appellants, would then have to bring an action to set aside the conveyance to the debtor's wife. In the instant case, the Trustee already has brought an action for fraudulent transfer, the result of which being the settlement approved by the bankruptcy court.
 
 
 23
 The bankruptcy court did not err in upholding the settlement agreement and refusing to reach explicitly the merits of the creditors' Objection to Claim of Exemptions. The fraudulent conveyance issue was settled below between the Trustee and the Debtor and has not been appealed, so the question of whether or not the conveyances were fraudulent for bankruptcy purposes has been rendered moot.
 
 The judgment is accordingly
 
 24
 AFFIRMED.
 
 
 
 [1]
 Even the Appellants concede that they do not contend that the Bankruptcy Court was in error in approving the Trustee's settlement standing alone, since the Court's giving deference to the judgment of the Trustee would not be unreasonable per se, and the Trustee's need to be guided by economic factors, such as cost and availability of assets in the bankruptcy estate, are practical matters which a Trustee must consider
 (emphasis added). In addition, the Appellants do not charge the Trustee with bad faith: "The Trustee had no personal sake in the outcome of this bankruptcy. His actions were guided solely by his fiduciary duties."
 
 
 [2]
 Whether or not the equitable doctrines of collateral estoppel or res judicata will apply in any further litigation we do not decide. Preclusion will arise as an issue only if a claim against Berry or his wife is pursued to satisfy the judgment against him from one or more of the three tenancy by the entireties properties. It would be untimely to consider the question here